**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 96-4193

FRED BULL, JR.,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 96-4194

KEITH L. HOPKINS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                              No. 96-4234

DOUGLAS A. DODSON, JR., a/k/a
Becky,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CR-95-73)

Submitted: February 28, 1997

Decided: May 20, 1998

Before WIDENER, MURNAGHAN, and LUTTIG, Circuit Judges.

_____

Nos. 96-4193 and 96-4194 affirmed and No. 96-4234 affirmed in part and vacated and remanded in part by unpublished per curiam opinion.

_____

**COUNSEL**

David E. Boone, Andrea C. Long, BOONE, BEALE, CARPENTER & COSBY; Jeffrey L. Everhart, Richmond, Virginia; Thomas P. Collins, ECK & COLLINS, Richmond, Virginia, for Appellants. Helen F. Fahey, United States Attorney, Nicholas S. Altimari, Assistant United States Attorney, John G. Douglas, Assistant United States Attorney, Mary Catherine Hart, Third-Year Law Student, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Douglas A. "Becky" Dodson, Jr., Keith Hopkins, and Fred Bull were charged in a seven-count second superseding indictment with various offenses relating to a large drug organization that Dodson headed. Dodson, Hopkins, and Bull now appeal their convictions on a number of the charges. Dodson also appeals his sentence. We affirm in all respects with the exception of Dodson's conviction for using or carrying a firearm in connection with a drug trafficking offense (Count Five). We vacate the conviction and sentence on Court Five. Finally, we vacate the sentences on Counts Two, Four, and Seven and remand for resentencing on those counts.

2

I

Evidence at trial showed that Becky Dodson led a heroin and crack distribution ring that operated in the Richmond, Virginia, area between 1992 and the summer of 1995. The Defendants and others transported, packaged, and sold crack and heroin. The organization operated out of a number of residences and at least one motel room during the course of the conspiracy. It last operated out of the apartment of Kim Booker, where Becky Dodson warehoused, packaged, and distributed drugs.

Two of Dodson's crack suppliers testified at trial. Tom Davis testified that he sold Dodson one and one-half kilos, plus one-eighth of an ounce, of crack. Haile Hopson sold Dodson one-half kilo of crack. Butch Page, a member of the Dodson organization, testified that Dodson generally obtained his heroin supply from New York or Baltimore. He or his agents usually took fellow conspirators, among them Page and Fred Bull, on the trips north. Page and Bull tested the potency and effectiveness of the heroin that Dodson proposed to buy to ensure that it was of good quality. Page, like Terry Edwards and others, also functioned as doormen/runners for Dodson, shuttling drugs and money between Dodson and his customers. In return for their services, Page and others were paid with drugs and money.

Violence and guns played a significant part in the organization. Page saw a number of guns in Dodson's possession; he witnessed Dodson's purchase of an AK-47 in early 1994. He testified that Dodson held a handgun to the head of Yvette Lyles when Dodson mistakenly thought she had stolen drugs from him. Beverly Cook, who assisted Dodson by weighing and selling heroin, testified that she witnessed the murder of Fred Davis, which Dodson directed. Davis had already been shot several times when Cook saw Dodson hand a gun to another man to complete the killing.

Cook testified that Keith Hopkins distributed heroin and crack for Dodson. Antonio Crews, who sold drugs for Hopkins for approximately one month, occasionally accompanied Hopkins when he needed a fresh supply of crack or heroin. Hopkins told Crews that he was going to see "Becky" to obtain more drugs. Crews saw Dodson and Hopkins together on one of these trips.

3

On July 12, 1995, Dodson was arrested. Officers conducted a search of his home and the Booker apartment, where Dodson had located his operation. Officers searching Booker's apartment recovered heroin, crack, guns, drug paraphernalia, and other items typically associated with drug trafficking. Dodson had a key to the apartment, paid the rent for the apartment, and was frequently seen there. His fingerprints were on a number of items seized from Booker's apartment.

Dodson, Hopkins and Bull were convicted of conspiracy to possess with intent to distribute heroin and cocaine, 21 U.S.C. § 846 (1994) (Count One). Dodson and Bull were found guilty of possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1) (1994) (Count Four), on approximately June 18, 1995, and Dodson was convicted of committing the same offense on or about July 12, 1995 (Count Two). Dodson additionally was convicted of using or carrying a firearm in connection with a drug trafficking offense, 18 U.S.C. § 924(c)(1) (1994) (Count Five), and of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (1994) (Count Seven).

II

Dodson, Hopkins, and Bull first claim that the evidence was insufficient to support their convictions. We must uphold the convictions if there was substantial evidence to support the jury's verdicts. Glasser v. United States, 315 U.S. 60, 80 (1942). In making this determination, we view the circumstantial and direct evidence in the light most favorable to the prosecution to decide whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. United States v. Lowe , 65 F.3d 1137, 1142 (4th Cir. 1995), cert. denied, #6D6D 6D# U.S. ___, 65 U.S.L.W. 3231 (U.S. Oct. 7, 1996) (No. 95-1659).

Appellants primarily argue that the credibility of many of the witnesses was suspect. Numerous witnesses had criminal records, were drug abusers, or were testifying in accordance with plea bargains in the hopes of receiving more lenient sentences. However, these facts were before the jury, whose function is to weigh the evidence and resolve any conflicts in the evidence. United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994). "Credibility determinations are within the sole province of the jury and are not susceptible to judicial

4

review." United States v. Lowe, 65 F.3d at 1142. We therefore will not disturb the jury's verdicts, provided there was some evidence to support them.

There was sufficient evidence to convict the three Appellants of conspiracy. To prove this offense, the prosecution"must establish that: (1) an agreement to possess [the drugs] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (in banc), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868).

Each defendant need not know the details of the conspiracy's structure and organization or the identities of all the conspirators. Id. "[A] loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular consumption market" may be sufficient to establish the existence of a conspiracy. United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993). Once the existence of a conspiracy is established, only a slight link between a defendant and the conspiracy will support a conviction. United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992).

Dodson obviously headed the instant conspiracy, which distributed heroin and crack. Hopkins sold drugs for Dodson, in furtherance of the conspiracy. And Fred Bull often traveled north to ensure that the heroin that Dodson purchased was of good quality. This conduct is sufficient to establish the Appellants' guilt on the conspiracy charge.

There was sufficient evidence to convict Dodson of violating § 841(a)(1) on July 12, 1995. Although he was not in actual possession of the drugs seized at Booker's apartment, he had constructive possession of them because he had "the power to exercise . . . dominion and control over them." See United States v. Zandi, 769 F.2d 229, 234 (4th Cir. 1985). He paid the rent on the apartment, to which he had a key, his drug business was conducted out of the apartment, and his fingerprints were found on a number of items seized from the apartment. As constructive possession will sustain a§ 841(a)(1) conviction, id., the evidence was sufficient to convict.

5

Sufficient evidence also supports Dodson's and Bull's convictions for possession of heroin with intent to distribute on or about June 18, 1995. Cook testified that Bull told her about the trip and that she saw Bull and others leave Richmond on June 18 for New York. In accordance with past practice, Bull tested the heroin that Dodson's agent purchased for resale in Richmond. Surveillance photographs from June 18 showed Bull leaving the Booker residence.

The evidence was sufficient to support Dodson's convictions of possession of a firearm by a convicted felon. There was a stipulation that Dodson was a convicted felon and that the firearm in question, an AK-47, was manufactured outside Virginia. Page testified that he saw Dodson purchase the weapon, which subsequently was stored, at Dodson's direction, in various locations.

After formal briefs were filed, we granted Dodson's motion to file a supplemental pro se brief. He claimed that there was no evidence that he had used or carried a firearm on April 20, 1995, as charged in Count Five. See 18 U.S.C. § 924(c)(1). On that date several conspirators committed a kidnaping in furtherance of the conspiracy. The United States concedes, and our review of the transcript confirms, that there was no evidence introduced that Dodson used or carried a firearm during this incident. We therefore vacate his conviction on Count Five.

III

Appellants argue that the district court erred when it sustained the government's objection to a proposed defense witness, David Baugh. Baugh, a criminal defense attorney, would have offered expert testimony about the federal sentence reduction process.

The Federal Rules of Evidence allow the admission of expert testimony when the expert's "knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The district court has broad discretion in deciding whether such testimony should be admitted. United States v. Portsmouth Paving Corp., 694 F.2d 312, 323 (4th Cir. 1982). Here, Baugh's testimony was unnecessary. Testifying in order to gain a more lenient sentence

6

is a concept well within the grasp of a typical juror. The court therefore did not abuse its discretion in ruling that Baugh could not testify.

IV

Dodson was sentenced to life imprisonment for conspiracy, 240 months on the § 841(a)(1) convictions, 120 months on the § 922(g)(1) conviction, and five years on the § 924(c)(1) conviction. The first four sentences run concurrently; the five-year sentence runs consecutively to the life sentence. Dodson contends, as he did before the district court, that the court erred in overruling his objections to the findings in the presentence report that he was responsible for the total weight of all drugs attributable to all the conspirators, USSG § 2D1.1(c)(1);[1] he was an organizer or leader of a conspiracy involving five or more people, USSG § 3B1.1(a); and he possessed a dangerous weapon in connection with the Fred Davis and Yvette Lyles incidents, USSG § 2D1.1(b)(1).

Dodson was properly held accountable for all drugs attributable to members of the conspiracy. For sentencing purposes, quantities attributable to persons convicted of conspiracy to distribute illegal drugs are determined by examining "the quantity of[drugs] reasonably foreseeable to each conspirator within the scope of his agreement." United States v. Irvin, 2 F.3d 72, 78 (4th Cir. 1993); see also USSG § 1B1.3(a)(1)(B). The government bears the burden of establishing by a preponderance of the evidence the quantity of drugs attributable to a defendant. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990). Determinations regarding reasonable foreseeability and quantity of drugs are factual findings reviewed for clear error. United States v. Banks, 10 F.3d 1044, 1057 (4th Cir. 1993).

In the subject case, the district court did not err in finding "more than ample" information to support the probation officer's determination that enough drugs were attributable to Dodson to warrant a base offense level of 38. Davis and Hopson alone testified that they sold Dodson over two kilos of crack. As 1.5 kilos of crack mandates a base offense level of 38, USSG § 2D1.1(c)(1), the district court's finding was not clearly erroneous.

_____

[1] U. S. Sentencing Guidelines Manual (1995).

7

Because Dodson was the leader of a conspiracy involving at least five people (including Hopkins, Bull, Page, Cook, and Booker), the 4-level adjustment of Dodson's offense level was not clearly erroneous. USSG § 3B1.1(a); see United States v. Harris, 39 F.3d 1262, 1270 (4th Cir. 1994). Similarly, the district court did not clearly err in increasing the base offense level by two levels because Dodson possessed a dangerous weapon. The Fred Davis and Yvette Lyles incidents demonstrate that the adjustment was proper. USSG § 2D1.1(b)(1); see United States v. Apple , 915 F.2d 899, 914 (4th Cir. 1990).

V

We accordingly affirm the convictions of Hopkins and Bull. We deny Dodson's motion to file an addendum to his supplemental brief. We vacate Dodson's conviction and sentence on Count Five and affirm his other convictions. To ensure that the § 924(c) conviction does not taint Dodson's overall sentence, we also vacate his sentences on Counts Two, Four, and Seven[2] and remand for resentencing. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

Nos. 96-4193/4194 -- AFFIRMED

No. 96-4234 -- AFFIRMED IN PART,
VACATED AND REMANDED IN PART

_____

[2] This does not in any way imply that the initial sentences on Counts Two, Four, and Seven were incorrect.

8